

**U.S. Department of Justice**

*Rachael S. Rollins*
*United States Attorney*
*District of Massachusetts*

*Main Reception: (617) 748-3100*

*John Joseph Moakley United States Courthouse*
*1 Courthouse Way*
*Suite 9200*
*Boston, Massachusetts 02210*

March 1, 2023

Mitchell C. Elman, Esq.
Law Offices of Mitchell C. Elman, PC
223 East Shore Road, Suite 210
Great Neck, New York 11023

Re:   <u>United States v. Danielle Miller</u>
         Criminal No. 1:21-cr-10228-FDS

Dear Mr. Elman:

The United States Attorney for the District of Massachusetts (the "U.S. Attorney") and your client, Danielle Miller ("Defendant"), agree as follows, pursuant to Federal Rule of Criminal Procedure ("Rule") 11(c)(1)(C):

1.   <u>Change of Plea</u>

No later than March 6, 2023, Defendant will plead guilty to counts One through Five of the Indictment: wire fraud, in violation of 18 U.S.C. § 1343 (Counts One through Three), and aggravated identity theft, in violation of 18 U.S.C. § 1028A (Counts Four and Five). Defendant admits that Defendant committed the crimes specified in these counts and is in fact guilty of each one.

Defendant agrees to the accuracy of the attached statement of facts.

2.   <u>Penalties</u>

Defendant faces the following mandatory minimum and maximum penalties:

As to Counts One through Three (wire fraud): incarceration for 20 years; supervised release for 3 years; a fine of $250,000, or twice the amount of gross gain or loss; a mandatory special assessment of $100; restitution; and forfeiture to the extent charged in the Indictment.

1

As to Counts Four and Five (aggravated identity theft): incarceration for a mandatory term of 2 years; to be served consecutively to any other term of imprisonment imposed; supervised release for 1 year; a fine of $250,000, or twice the amount of gross gain or loss; a mandatory special assessment of $100; and restitution.

Defendant understands that, if Defendant is not a United States citizen by birth, pleading guilty may affect Defendant's immigration status. Defendant agrees to plead guilty regardless of any potential immigration consequences, even if Defendant's plea results in being automatically removed from the United States.

3.  Rule 11(c)(1)(C) Plea

In accordance with Rule 11(c)(1)(C), if the Court accepts this Plea Agreement, the Court must include the agreed disposition in the judgment. If the Court rejects any part of this Plea Agreement, the U.S. Attorney may void the agreement and/or Defendant may withdraw from it. Defendant may not withdraw Defendant's plea for any other reason.

Should the U.S. Attorney void the agreement and/or Defendant moves to withdraw Defendant's guilty plea, Defendant agrees to waive any defenses based upon statute of limitations, the constitutional protection against pre-indictment delay, and the Speedy Trial Act for all charges that could have been brought as of the date of this Plea Agreement.

4.  Sentencing Guidelines

The parties agree, based on the following calculations, that Defendant's total "offense level" as to Counts One through Three under the Guidelines is 24:

> a) Defendant's base offense level is 7, because the count of conviction has a statutory maximum of 20 years or more (USSG § 2B1.1(a)(1));
>
> b) Defendant's offense level is increased by 16, because the loss exceeded $1,500,000 (USSG §2B1.1(b)(1)(I));
>
> c) Defendant's offense level is increased by 2, because the offense involved 10 or more victims;
>
> d) Defendant's offense level is increased by 2, because the offense involved the use of sophisticated means and the defendant intentionally engaged in the use of one or more shell companies; and
>
> e) Defendant's offense level is decreased by 3, because Defendant has accepted responsibility for Defendant's crimes (USSG § 3E1.1).

The parties agree, based USSG § 2B1.6(a), that Defendant's guideline sentence as to Counts Four and Five is 2 years.

2

Defendant understands that the Court is not required to follow this calculation. Defendant also understands that the government will object to any reduction in Defendant's sentence based on acceptance of responsibility, and may be released from the parties' agreed-upon disposition in Paragraph 5 if: (a) at sentencing, Defendant (directly or through counsel) indicates that Defendant does not fully accept responsibility for having engaged in the conduct underlying each of the elements of the crimes to which Defendant is pleading guilty; or (b) by the time of sentencing, Defendant has committed a new federal or state offense, or has in any way obstructed justice.

Nothing in this Plea Agreement affects the U.S. Attorney's obligation to provide the Court and the U.S. Probation Office with accurate and complete information regarding this case.

5.    Agreed Disposition

The parties agree on the following sentence:

a) incarceration for 36 months (as to Counts One through Three, to be imposed concurrently as to each other) and for 24 months (as to Counts Four and Five, to be imposed concurrently as to each other but consecutively as to Counts One through Three) — *i.e.*, a total term of incarceration of 60 months.

b) a fine within the guideline sentencing range, unless the Court finds that the Defendant lacks the financial resources to pay a fine.

c) 36 months of supervised release;

d) a mandatory special assessment of $500, which Defendant must pay to the Clerk of the Court by the date of sentencing;

e) restitution of $1,307,295; and

f) forfeiture as set forth in Paragraph 7.

6.    Waiver of Appellate Rights and Challenges to Conviction or Sentence

Defendant has the right to challenge Defendant's conviction and sentence on "direct appeal." This means that Defendant has the right to ask a higher court (the "appeals court") to look at what happened in this case and, if the appeals court finds that the trial court or the parties made certain mistakes, overturn Defendant's conviction or sentence. Also, in some instances, Defendant has the right to file a separate civil lawsuit claiming that serious mistakes were made in this case and that Defendant's conviction or sentence should be overturned.

Defendant understands that Defendant has these rights, but now agrees to give them up. Specifically, Defendant agrees that:

3

a) Defendant will not challenge Defendant's <u>conviction</u> on direct appeal or in any other proceeding, including in a separate civil lawsuit; and

b) Defendant will not challenge Defendant's <u>sentence,</u> including any court orders related to forfeiture, restitution, fines or supervised release, on direct appeal or in any other proceeding, including in a separate civil lawsuit.

The U.S. Attorney agrees not to appeal the imposition of the sentence agreed to by the parties in paragraph 5.

Defendant understands that, by agreeing to the above, Defendant is agreeing that Defendant's conviction and sentence will be final when the Court issues a written judgment after the sentencing hearing in this case. <u>That is, after the Court issues a written judgment, Defendant will lose the right to appeal or otherwise challenge Defendant's conviction and sentence regardless of whether Defendant later changes Defendant's mind or finds new information that would have led Defendant not to agree to give up these rights in the first place.</u>

Defendant is agreeing to give up these rights in exchange for concessions the U.S. Attorney is making in this Agreement.

The parties agree that, despite giving up these rights, Defendant keeps the right to later claim that Defendant's lawyer rendered ineffective assistance of counsel, or that the prosecutor or a member of law enforcement involved in the case engaged in misconduct serious enough to entitle Defendant to have Defendant's conviction or sentence overturned.

7.   <u>Forfeiture</u>

Defendant understands that the Court will, upon acceptance of Defendant's guilty plea, enter an order of forfeiture as part of Defendant's sentence, and that the order of forfeiture may include assets directly traceable to Defendant's offense, assets used to facilitate Defendant's offense, substitute assets and/or a money judgment equal to the value of the property derived from, or otherwise involved in, the offense.

The assets to be forfeited specifically include, without limitation, the following:

a. Approximately $467,977.74 seized from TD Bank accounts on or about June 9, 2021;

b. Approximately $104,535.79 seized from Chime Financial/Stride Bank accounts on or about June 3, 2021;

c. Approximately $4,441 seized from residence in Miami, FL, on or about May 11, 2021;

d. Approximately $27,115.85 in Money Orders seized from residence in Miami, FL on or about May 11, 2021;

4

    e.  Assorted luxury items, including
        i.  one Rolex Wristwatch;
        ii.  one Louis Vuitton bag;
        iii.  one pair Dior shoes;
        iv.  one Dior blouse;
        v.  one Large Rimowa suitcase;
        vi.  one small Rimowa suitcase; and
    f.  $1,307,295, to be entered in the form of a forfeiture money judgment.

Defendant admits that the specific assets listed as items a.-e. are subject to forfeiture on the grounds that they constitute, or are derived from, proceeds of Counts One through Three (wire fraud).

Defendant also admits that $1,307,295 is subject to forfeiture on the grounds that it is equal to the amount of proceeds the defendant derived from the offense. The United States agrees to credit the net proceeds recovered after the final forfeiture of items a.-e. towards the forfeiture money judgment. The Defendant understands that seized personal property, such as the luxury items listed in item e., often do not have sufficient value to justify resale, and the Defendant agrees that the United States may, at its sole discretion, destroy or discard any of the property listed as item e. if the United States determines any or all of the listed property does not have sufficient value to justify liquidation.

Defendant acknowledges and agrees that the amount of the forfeiture money judgment represents the amount of proceeds that the Defendant obtained (directly or indirectly), and/or facilitating property and/or property involved in, the crimes to which Defendant is pleading guilty and that, due at least in part to the acts of Defendant, the proceeds or property have been transferred to, or deposited with, a third party, spent, cannot be located upon exercise of due diligence, placed beyond the jurisdiction of the Court, substantially diminished in value, or commingled with other property which cannot be divided without difficulty. Accordingly, Defendant agrees that the United States is entitled to forfeit as "substitute assets" any other assets of Defendant up to the value of the now missing directly forfeitable assets.

Defendant agrees to consent to the entry of orders of forfeiture for such property and waives the requirements of Federal Rules of Criminal Procedure 11(b)(1)(J), 32.2, and 43(a) regarding notice of the forfeiture in the charging instrument, advice regarding the forfeiture at the change-of-plea hearing, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment. Defendant understands and agrees that forfeiture shall not satisfy or affect any fine, lien, penalty, restitution, cost of imprisonment, tax liability or any other debt owed to the United States.

Defendant agrees to assist fully in the forfeiture of the foregoing assets. Defendant agrees to promptly take all steps necessary to pass clear title to the forfeited assets to the United States, including but not limited to executing any and all documents necessary to transfer such title,

assisting in bringing any assets located outside of the United States within the jurisdiction of the United States, and taking whatever steps are necessary to ensure that assets subject to forfeiture are not sold, disbursed, wasted, hidden or otherwise made unavailable for forfeiture. Defendant further agrees (a) not to assist any third party in asserting a claim to the forfeited assets in an ancillary proceeding, and (b) to testify truthfully in any such proceeding.

If the U.S. Attorney requests, Defendant shall deliver to the U.S. Attorney within 30 days after signing this Plea Agreement a sworn financial statement disclosing all assets in which Defendant currently has any interest and all assets over which Defendant has exercised control, or has had any legal or beneficial interest. Defendant further agrees to be deposed with respect to Defendant's assets at the request of the U.S. Attorney. Defendant agrees that the United States Department of Probation may share any financial information about the Defendant with the United States Attorney's Office.

Defendant also agrees to waive all constitutional, legal, and equitable challenges (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement.

Defendant hereby waives and releases any claims Defendant may have to any vehicles, currency, or other personal property seized by the United States, or seized by any state or local law enforcement agency and turned over to the United States, during the investigation and prosecution of this case, and consents to the forfeiture of all such assets.

8.   Civil Liability

This Plea Agreement does not affect any civil liability, including any tax liability, Defendant has incurred or may later incur due to Defendant's criminal conduct and guilty plea to the charges specified in Paragraph 1 of this Agreement.

9.   Breach of Plea Agreement

Defendant understands that if Defendant breaches any provision of this Agreement, violates any condition of Defendant's pre-trial release or commits any crime following Defendant's execution of this Plea Agreement, Defendant cannot rely upon such conduct to withdraw Defendant's guilty plea. Defendant's conduct, however, would give the U.S. Attorney the right to be released from the U.S. Attorney's commitments under this Agreement, to pursue any charges that were, or are to be, dismissed under this Agreement, and to use against Defendant any of Defendant's statements, and any information or materials Defendant provided to the government during investigation or prosecution of Defendant's case—even if the parties had entered any earlier written or oral agreements or understandings about this issue.

Defendant also understands that if Defendant breaches any provision of this Agreement or engages in any of the aforementioned conduct, Defendant thereby waives any defenses based on the statute of limitations, constitutional protections against pre-indictment delay, and the Speedy Trial Act, that Defendant otherwise may have had to any charges based on conduct occurring

6

before the date of this Agreement.

10.    Who is Bound by Plea Agreement

This Agreement is only between Defendant and the U.S. Attorney for the District of Massachusetts. It does not bind the Attorney General of the United States or any other federal, state, or local prosecuting authorities.

11.    Modifications to Plea Agreement

This Agreement can be modified or supplemented only in a written memorandum signed by both parties, or through proceedings in open court.

*      *      *

If this letter accurately reflects the agreement between the U.S. Attorney and Defendant, please have Defendant sign the Acknowledgment of Plea Agreement below. Please also sign below as Witness. Return the original of this letter to Assistant U.S. Attorney William F. Abely.

Sincerely,

RACHAEL S. ROLLINS
United States Attorney

By:    ANNE PARUTI
Chief, Major Crimes Unit
MARK GRADY
Deputy Chief, Major Crimes Unit

William F. Abely
Benjamin Saltzman
Assistant U.S. Attorneys

7

## ACKNOWLEDGMENT OF PLEA AGREEMENT

I have read this letter and discussed it with my attorney. The letter accurately presents my agreement with the United States Attorney's Office for the District of Massachusetts. There are no unwritten agreements between me and the United States Attorney's Office, and no United States government official has made any unwritten promises or representations to me in connection with my guilty plea. I have received no prior offers to resolve this case.

I understand the crimes I am pleading guilty to, and the mandatory minimum and maximum penalties for those crimes. I have discussed the Sentencing Guidelines with my lawyer, and I understand the sentencing ranges that may apply.

I am satisfied with the legal representation my lawyer has given me, and we have had enough time to meet and discuss my case. We have discussed the charges against me, possible defenses I might have, the terms of this Agreement and whether I should go to trial.

I am entering into this Agreement freely and voluntarily and because I am in fact guilty of the offenses. I believe this Agreement is in my best interest.

Danielle Miller
Defendant

Date: 03/04/2023

I certify that Danielle Miller has read this Agreement and that we have discussed what it means. I believe Danielle Miller understands the Agreement and is entering into it freely, voluntarily, and knowingly. I also certify that the U.S. Attorney has not extended any other offers regarding a change of plea in this case.

Mitchell Elman
Attorney for Defendant Danielle Miller

Date: 03/04/2023

8

<u>Statement of Facts</u>

1.      For a timeframe beginning at least as far back as July 2020, and extending to May 2021, Defendant obtained and utilized names, Social Security numbers, and other personal identifying information ("PII") of various individuals without their knowledge or permission.

2.      Defendant used victim PII to apply for and open bank accounts, to apply for and receive federally-funded Pandemic Unemployment Assistance ("PUA") benefits, to apply for and receive disbursements associated with Economic Injury Disaster Loans ("EIDLs"), to apply for and receive disbursements associated with the Paycheck Protection Program ("PPP") to book private air travel, to rent luxury accommodations, and to purchase luxury goods. Defendant publicized certain travel, purchases, and other uses of fraud proceeds via her Instagram account.

3.      For example, Person 1 was a resident of Massachusetts. On or about August 1, 2020, Defendant used Person 1's PII to access information regarding Person 1 on a website maintained by the Massachusetts Registry of Motor Vehicles ("RMV"). Also on August 1, 2020, Defendant opened a TD Bank account under the name of Person 1 and submitted a fraudulent EIDL application in the name of Person 1. On or about August 6, 2020, the U.S. Small Business Administration ("SBA") deposited approximately $102,000 into the TD Bank account in the name of Person 1. On or about August 22, 2020, Defendant received services at a Miami cosmetic center costing more than $4,500 in the name of Person 1. Also in August 2022, Defendant arranged a private charter flight in the name of Person 1, using a fraudulent Massachusetts driver's license in the name of Person 1, but with a photograph depicting Defendant. On or about September 2020, Defendant traveled via Gulfstream jet from Fort Lauderdale, Florida to Van Nuys, California. In or around September 2020, Defendant stayed under the name of Person 1 at Petit Ermitage, a luxury hotel in West Hollywood, California. On or about October 19, 2020, Defendant submitted an application for PUA benefits in the name of Person 1 to the Massachusetts Department of Unemployment Assistance ("DUA").

4.      As a further example, Person 2 was a resident of Wisconsin. In July 2020, Defendant used Person 2's PII to open a TD Bank account and to submit a fraudulent EIDL application, which resulted in the SBA depositing approximately $62,400 into the TD Bank account. Defendant also used Person 2's PII to submit an application for PUA benefits, which resulted in the State of Arizona depositing approximately $6,200 into the TD Bank account. Defendant also used Person 2's PII to rent a luxury apartment in the Brickell neighborhood of Miami, Florida, and Defendant resided at this apartment from in or around September 2020 until May 2021. On or about November 12, 2020, Defendant used Person 2's PII to rent a Zipcar in Miami, Florida, which was not returned.

5.      The EIDL application submitted using the PII of Person 2 identified the borrower as a Limited Liability Company doing business as a retail jewelry store in Miami, Florida. In fact, no such business existed. Defendant also utilized other shell companies to submit EIDL applications and/or open business checking accounts.

6.      In using the PII of Person 1 to access the servers of the RMV and DUA, and in

9

using the PII of Person 2 to rent a Zipcar, Defendant caused the use of interstate wire communications.

7.     In part given the repeated and successful use of the PII of Persons 1 and 2, Defendant knew or had reason to know that these were actual people.

8.     As a further example, in April 2021, Defendant used the PII of Person 4 to open a business checking account in the name of a supposed consulting company. This company had no actual operations or business dealings; it was a shell company. Also in April 2021, Defendant submitted a fraudulent EIDL application in the name of this consulting company, which resulted in the SBA depositing approximately $499,000 into the TD Bank account.

9.     In May 2021, agents executed a search warrant at Brickell apartment at which the Defendant was residing. Among other things, agents located the following items :

   a.   TD Bank card for the account opened with the PII of Person 1.

   b.   Fraudulent Massachusetts driver's license in the name of Person 1, but with a photograph depicting Defendant.

   c.   Handwritten notes regarding Person 1.

   d.   TD Bank card for the account opened with the PII of Person 2.

   e.   Fraudulent Wisconsin driver's license in the name of Person 2, but with a photograph depicting Defendant.

   f.   Fraudulent U.S. Passport Card in the name of Person 2, but with a photograph depicting Defendant.

   g.   Handwritten notes regarding Person 2.

   h.   TD Bank card for the account opened with the PII of Person 4

   i.   Fraudulent Texas driver's license in the name of Person 2, but with a photograph depicting Defendant.

   j.   At least 14 other TD Bank cards for accounts in various names.

   k.   At least 30 other fraudulent Texas driver's licenses in various names, each with a photograph depicting Defendant.

   l.   At least 3 other fraudulent Wisconsin driver's licenses in various names, each with a photograph depicting Defendant.

   m.   At least 3 other fraudulent U.S. Passport Cards in various names, each with a photograph depicting Defendant.

n. At least 1 fraudulent Arizona driver's license in another name, but with a photograph depicting Defendant.

o. At least 1 fraudulent California driver's license in another name, but with a photograph depicting Defendant.

p. A notebook containing a "To do" list for October 11, 2020, which includes the notes "apply for 10 SBAs" and "open at least 8 TD accounts."

q. Handwritten scripts for apparent use in applying for SBA loans – for example, "From Covid 19 to the winter storms, I need this EIDL to provide the necessary working capital to help my small business survive until normal operations will resume."

r. Various luxury items including a Rolex watch, a Louis Vuitton bag, and two Rimowa suitcases.

10. The Defendant obtained money, services, or tangible items from various sources primarily through her fraudulent use of PII – including the following:

| Source | Approximate Amount | Description |
|---|---|---|
| SBA | $1,210,080 | Proceeds from fraudulent EIDL and PPP loans |
| State of Arizona | $60,693 | Fraudulent PUA benefits |
| State of California | $16,493 | Fraudulent PUA benefits |
| State of Kansas | $29,346 | Fraudulent PUA benefits |
| State of Texas | $2,140 | Fraudulent PUA benefits |
| State of New York | $504 | Fraudulent PUA benefits |

11